UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEWEL SPENCER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02001-SEB-DLP |
| | ) | |
| KEYENCE CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER GRANTING DEFENDANT KEYENCE CORPORATION OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

This is a product liability case brought by Plaintiff Jewel Spencer ("Spencer") to recover damages for injuries she incurred to her hand as a result of a workplace accident on June 21, 2018, allegedly caused by a defective safety mechanism developed by Defendant Keyence Corporation of America ("Keyence") and installed in a steel press machine. Keyence filed its Motion for Summary Judgment [Dkt. 83] on July 9, 2021, which has gone unresponded to by Ms. Spencer; Keyence also filed a Reply brief [Dkt. 102] on December 13, 2021.[1] For the reasons detailed below, Keyence's motion for summary judgment is GRANTED.

---

[1] This litigation commenced in Madison Circuit Court and was removed by Keyence to our court on July 30, 2020. Co-defendant Komatsu America Corporation consented to the removal on August 5, 2020. Co-defendant Elsa (a subsidiary of LTD Sakamoto Industry *et al.*) appeared on August 6, 2020 and filed its motion to dismiss followed by Elsa's individual motion to dismiss on September 3, 2020. One week later, Plaintiff moved to dismiss her claim against Elsa without prejudice, which motion was granted. Plaintiff's Second Amended Complaint against Keyence and Komatsu America was filed on February 9, 2021. Elsa thereafter participated as a non-party. A settlement was eventually reached with Komatsu leaving Keyence as the only remaining defendant.

## **Factual Background**[2]

Ms. Spencer was an employee of Elsa Corporation, a manufacturing facility located in Elwood, Indiana. While working on June 21, 2018, she claims that her hand became caught in a press machine made by Komatsu which included an allegedly defective safety mechanism made by Keyence and referred to as a Keyence Guard. Ms. Spencer's injury consisted of a partial loss of her thumb and index finger. When Ms. Spencer was deposed, she testified that at the time of the accident she was being trained by a co-worker, Justin Edwards, who along with a crew leader demonstrated several times for her benefit the manner in which the Komatsu light curtain and the Keyence overhead guard operated to provide a zone of safety designed to protect the operator. The press mechanism was designed to cease operation whenever a hand was inserted into the protected zone. Ms. Spencer testified that the Komatsu and Keyence safety devices were working properly on the date of her accident, neither having been jammed or otherwise impeded.

In preparing the press for the after-lunch shift, Mr. Edwards "intentionally and inexplicably pressed two buttons on the operator's table … to active the press, which then stamped down on Spencer's hand." Def.'s Br. at 2. Ms. Spencer was able to stop the

---

[2] The facts recited herein have been lifted from Keyence's Motion for Summary Judgment which itself is properly and thoroughly anchored throughout to references to exhibits found in the record. For sake of simplicity, and because these facts have not been disputed by Plaintiff, we recount them in narrative fashion, noting specifically the sources of any quotes.

press by stepping backwards into the safety zone, which movement prompted the machine to release her hand.

Following the accident, Ms. Spencer, accompanied by her stepfather, returned to view the press at issue and was informed by other employees present at the site that Elsa employees had originally installed the Keyence Guard in such a way as to make it point directly downward. After the accident, they said that Elsa employees adjusted the guard to point toward the machine where Ms. Spencer had been standing when she was injured.

Elsa's corporate representative, Aaron Edelbrock, testified at his deposition that, based on the company's investigation, the Keyence Guard did not play any role in causing the accident. In addition, he said, the company had determined that Ms. Spencer and Mr. Edwards had violated Elsa rules in two ways leading to the incident and Ms. Spencer's injuries: by having more than one person operating the press and by not following proper protocols for dealing with a jammed machine.

Mr. Edwards has admitted his own culpability in causing the accident, testifying that even though he saw Ms. Spencer with her hand inside the machine, he intentionally and for no apparent reason activated the press. He testified that he, himself, had been employed at Elsa for only 100 or so days prior to the incident and was not qualified to train Ms. Spencer or any other employees on how to use the press. As a sanction for his role in causing this injury, Mr. Edwards received only a nominal suspension from work.

The Elsa corporate representative (Mr. Edelbrock) also admitted in his deposition that Elsa was solely responsible for affixing the Keyence Guard to the Komatsu Press and

3

that Keyence did not participate in any way in its installation or programming. Elsa oversaw the directing of the Keyence Guard's path when it was installed. Elsa had never performed any servicing on the device prior to the incident nor reported any malfunction. Further, Elsa was the party that had adjusted the angle at which the Keyence Guard was pointed and welded the same guard back onto the press following this incident. Elsa reportedly never found any mechanical, functional or physical problem(s) with the Keyence Guard at or before the time of the accident. Since the repositioning of the Keyence Guard by Elsa employees after the accident, it has been used safely without any other change(s) to the device and without any further incidents or injuries to employees. No one connected with or acting on behalf of Elsa or with the Indiana Occupational Safety and Health Administration (IOSHA) has ever concluded that the Keyence Guard played any role in the cause of the accident. Indeed, it was Elsa that was fined for this incident by IOSHA ($4500), not Keyence.

## Legal Analysis

### I.   Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate

the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Because here, Ms. Spencer has failed to respond to the summary judgment motion, the facts alleged in Keyence's motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must ... file and serve a response brief and any evidence ... that the party relies on to oppose the motion. The response must ... identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "[r]educe[ ] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). *Flame-Bey v. Mitchell,* No. 119CV04067SEBMJD, 2021 WL 2139062, at *2 (S.D. Ind. May 26, 2021).

## II. Discussion

The Indiana Products Liability Act ("IPLA" or the "Act") governs claims brought by a consumer against a manufacturer for physical harm caused by its product, regardless

of the specific theory of liability. IND. CODE ANN. § 34-20-1-1 (West 2021). "Under the Act, a manufacturer who places 'into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer … is subject to liability for physical harm caused by that product.'" *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007 (7th Cir. 2020) (quoting IND. CODE § 34-20-2-1).

To succeed on a claim under the IPLA, the plaintiff must establish that "(1) he or she was harmed by the product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006). A plaintiff can establish that a product was defective "by showing one of the following: a design defect, a manufacturing defect, or a failure to warn." *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001); *see also Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019) ("A product may be defective under the IPLA if it is defectively designed, if it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use.").

Ms. Spencer has alleged that Keyence put into the stream of commerce a defective product—to wit, an overhead sensor—that caused her to be injured. Largely because Plaintiff has completely defaulted on her briefing responsibility in response to the motion for summary judgment, it is not clear if, in advancing this claim, she (by counsel) contends that the device was defectively designed, lacked adequate warnings about dangers associated with its use, or embodied a manufacturing flaw. Whatever her

6

specific theory of liability, she has offered no evidence that would create or has created any questions of fact as to any deficiency or defect in the Keyence Guard device.

No facts have been adduced or otherwise come to light that show that the Keyence Guard sold by Defendant was defectively designed, incorporated a manufacturing flaw, or lacked adequate warnings about the safety considerations associated with its use. Absent any genuine issues of material facts as to any of these features of the device, summary judgment must be granted.

### III. Conclusion

As detailed above, no evidence has been adduced to establish that Plaintiff's workplace injury on June 21, 2018, was the result of a defective product manufactured by Keyence. Thus, Keyence Corporation of America cannot be held liable under the IPLA for those injuries that were sustained in connection with the use of its product. Defendant's Motion for Summary Judgment is <u>GRANTED</u>. Final Judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____1/27/2022_____          _____*Sarah Evans Barker*_____
                                                                  SARAH EVANS BARKER, JUDGE
                                                                  United States District Court
                                                                  Southern District of Indiana

Distribution:

Timothy C. Ammer
MONTGOMERY JONSON LLP
tammer@mojolaw.com

Nicholas A. Bourff
SCHILLER LAW OFFICES, LLC
nick@schillerlawoffices.com

Troy Jeremy Chinnici
PATTON & RYAN LLC
tchinnici@pattonryan.com

Justine Farris-Niehaus
BARNES & THORNBURG LLP
Justine.Farris@btlaw.com

Gregory Todd Hoffpauir
MONTGOMERY JONSON LLP
thoffpauir@mojolaw.com

Mary E. McClellan
PATTON & RYAN LLC
mmcclellan@pattonryan.com

John W. Patton, Jr.
PATTON & RYAN LLC
jpatton@pattonryan.com

Richard P. Winegardner
BARNES & THORNBURG, LLP (Indianapolis)
rwinegar@btlaw.com